## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-14356-CIV-MIDDLEBROOKS/MAYNARD

**TIMOTHY HIGHTOWER,**

      **Petitioner,**

**v.**

**SECRETARY, RICKY D. DIXON,**

      **Respondent.**

_____/

### REPORT AND RECOMMENDATION ON PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS [DE 1]

Petitioner Timothy Hightower ("Petitioner"), a state prisoner at Calhoun Correctional Institution in Blountstown, Florida, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 ("Petition") challenging his conviction in the Nineteenth Judicial Circuit Court in and for St. Lucie County, Florida.  DE 1.  Presiding U.S. District Judge Donald M. Middlebrooks referred the matter to me for report and recommendation.  DE 5.  The record includes the Petition, DE 1, Respondent's Response, DE 8, and Petitioner's Reply, DE 12.[1]  Having reviewed the record and considered the parties' arguments, I respectfully recommend that the Petition be **DENIED**.

---

[1] Respondent's Response includes an attached appendix containing most of the relevant state court documents and transcripts.  *See* DE 8-1 (appendix index), DE 8-2 through 8-4.  Respondent also separately filed the transcripts from Petitioner's underlying state court jury trial and conventionally filed a relevant video recording from August 5, 2015, that was admitted at trial. *See* DE 9, DE 10.

## BACKGROUND[2]

Petitioner was initially charged by the State of Florida with seven narcotics-related offenses based on drug sales occurring on July 30, 2015 and August 5, 2015. Specifically, Petitioner was charged with: two counts of sale or delivery of cocaine within 1,000 feet of a place of worship (Counts 1 and 3), two counts of possession of cocaine (Counts 2 and 4), possession of cocaine with intent to sell within 1,000 feet of a place of worship (Count 5), possession of hydrocodone (Count 6), and possession of alprazolam (Count 7). DE 8-2 at 2-4, Ex. 1.

While his state court case was pending, Petitioner was represented by at least two attorneys: Adriana Bucchi and Jacob Noble. On March 6, 2017, the state trial court held a docket call. Ms. Bucchi represented Petitioner at that time. The following events transpired at this hearing. The State personally served Petitioner with a copy of its Notice of Intent to Seek Enhanced Penalties under the Habitual Felony Offender (HFO) statute. DE 8-2 at 187, 202, Ex. 7. Ms. Bucchi put on the record that Petitioner had previously rejected an offer from the State of 8 years in prison. *Id.* at 187-88, 205-08. The State extended an offer of 10 years in prison which Petitioner promptly rejected. *Id.* at 210-12. Petitioner was unequivocally advised that if he did not accept the extended plea offer, the State would seek enhanced penalties against him as a HFO if he were convicted and, due to his HFO status he was subject to a potential life sentence. *Id.* Petitioner asked the court to remove Ms. Bucchi as his lawyer because—according to Petitioner—she refused to do depositions or move forward with the defense

---

[2] Record cites are to the Docket Entry and page number assigned by this Court's CM/ECF filing system rather than the exhibit or transcript's preexisting page numbers, except where the page number assigned by the Court's CM/ECF filing system is illegible. Where the CM/ECF page number is illegible, I cite to the exhibit number and or preexisting page number utilized by the parties.

Petitioner wanted. *Id.* at 190-91, 197-98, 200-01. Petitioner stated that he was concerned about racial discrimination in his case. *Id.* at 213-18. The state trial judge granted Petitioner's motion for a new lawyer and reassigned the case to another judge as well. *Id.* at 217.

The next relevant pretrial hearings were held over one year later, on June 1 and June 4, 2018. By that date, Petitioner was represented by Mr. Noble, who had filed a motion to sever Counts 1 and 2 (the July 30 counts) from Counts 3 through 7 (the August 5 counts). *Id.* at 220-225, 263. The trial court denied the motion to sever.[3] *Id.* at 233, 264-66. Petitioner then asked the court to remove Mr. Noble as his lawyer because Mr. Noble would not call certain witnesses in the case, including Petitioner's Co-Defendant Lawanda Northard. *Id.* at 225-26, 238-39. The court denied Petitioner's motion for a new lawyer and set the case for trial. *Id.* at 258.

Petitioner went to trial on June 4 and 6, 2018. The jury returned a verdict of guilty on Counts 3, 4, and 5, and not guilty on Counts 1, 2, 6, and 7. DE 8-2 at 2-4, Ex. 1. In other words, the jury found Petitioner guilty only of the counts involving the August 5 drug transaction; Petitioner was acquitted of the July 30 drug transaction and the counts involving possession of alprazolam and hydrocodone. *Id.* The trial court sentenced Petitioner as a habitual offender to fifty (50) years' imprisonment on Count 3, five (5) years' imprisonment on Count 4, and thirty (30) years' imprisonment on Count 5, to be served concurrently. DE 8-2 at 6-12, Ex. 2.

---

[3] On June 4, 2018, prior to jury selection, defense counsel "renew[ed his arguments] for [the] purpose of preserving the Motion to Sever." DE 8-2 at 263. Defense counsel noted that denying severance caused additional prejudice because some of the August 5 counts involved alprazolam and hydrocodone, while the July 30 counts involved only crack cocaine. *Id.* Defense counsel also contended that "the State did not provide *Williams* Rule notice." DE 8-2 at 264. The trial judge denied the renewed motion. *Id.* at 264-66.

Petitioner appealed his conviction and sentence to the Florida Fourth District Court of Appeal ("Fourth DCA") in case number 4D18-2236.  DE 8-2 at 14-65, Ex. 3.  On appeal, he raised the following two issues:

1.   The trial court abused its discretion and reversibly erred by denying [Petitioner's] motion to sever.

2.   The trial court abused its discretion in permitting the state, over [Petitioner's] hearsay and confrontation clause objections, to elicit testimony from [the lead investigator] concerning out-of-court statements made by the non-testifying confidential informant.

*Id.*[4]  On October 24, 2019, the Fourth DCA affirmed Petitioner's conviction and sentence in a *per curiam* decision.  DE 8-2 at 109, Ex. 5; *Hightower v. State*, 288 So. 3d 654 (Fla. 4th DCA 2019).

Following his direct appeal, Petitioner filed a Rule 3.850 motion in the state trial court. DE 8-2 at 111, Ex. 6.  This motion asserted that trial counsel rendered ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution by (1) providing affirmative misadvice regarding a plea and failing to advise Petitioner to accept a favorable plea offer, (2) failing to investigate and present the testimony of favorable witness Lawanda Northard at trial, (3) failing to investigate and present the testimony of favorable witness Ronnie Clark at trial, (4) failing to advise Petitioner to testify on his own behalf, and (5) failing to strike an actually biased juror from the jury panel.  *Id.*  The state trial court denied Petitioner's Rule 3.850 motion.  DE 8-4 at 93, Ex. 9.

Petitioner appealed the denial of grounds one through four of his Rule 3.850 motion to the Fourth DCA.  DE 8-4 at 98-138, Ex. 10.  The Fourth DCA denied the appeal in a *per curiam* opinion.  DE 8-4 at 140, Ex. 11.  Petitioner moved for rehearing and/or written opinion.  DE 8-

---

[4] The claims in Petitioner's direct appeal are raised in the presently pending federal petition as claims one and two.

4 at 143-149, Ex. 12.  The Fourth DCA denied the motion for rehearing and/or written opinion.

DE 8-4 at 151, Ex. 13.  The Fourth DCA's Mandate issued on October 27, 2023.  DE 8-4 at

152-53, Ex. 14.  Petitioner filed his instant Petition on November 10, 2023.  DE 1.

## **TRIAL EVIDENCE**

At trial, the lead investigator in the case—Deputy LaSolomon Archie—testified that in

July and August 2015, he was investigating a convenience store called Around the Clark located

in Fort Pierce, Florida.  DE 8-3 at 158-59.  As part of the investigation, Deputy Archie used a

confidential informant (CI) to conduct controlled purchases of narcotics from Around the Clark

on July 30 and August 5, 2025.  *Id*. at 161-86.  The CI's identity was not disclosed at trial.  *Id*.

at 165-66.

On July 30, 2015, Deputy Archie met with the CI at a location near the Around the Clark

store.  *Id*. at 161-86.  Prior to the controlled buy, officers searched the CI and his car to confirm

he did not possess any currency or narcotics.  *Id*. at 166-67.  After the search, the CI was given

a video recording device and provided $20 in US currency.  *Id*. at 167, 181. The officers took

photographs of the serial numbers on the currency, but did not record themselves handing the

money to the CI.  *Id*.

Deputy Archie listened on a communications device while observing the store.  *Id*. at

167-69.  Deputy Archie did not accompany the CI inside the store.  *Id*.   The CI went into the

store and later returned to the officers carrying three pieces of crack cocaine.  *Id*. at 181.  The

$20 in investigative funds provided to the CI was never recovered.  *Id*.

On August 5, 2015, the CI performed a second controlled buy at the Around the Clark

store.  The officers searched the CI and his car before affixing the video recording device to the

CI.  *Id*. at 166-67, 185.  This time, Deputy Archie provided the CI with $75 in investigative

funds.  *Id*. at 186.  The CI entered the store.  The State played the video of the August 5 transaction[5] for the jury.  *Id*. at 186.  The video shows Lawanda Northard, another store employee, behind the counter with Petitioner.  DE 10, Ex. 15.  The CI, who had been given $75 by Deputy Archie, says "Seventy-five."  *Id*.  Northard takes a small brown paper bag and holds it open for Petitioner.  *Id*.  Petitioner counts out ten small objects with his hand and puts them into the bag.  *Id*.  The bag is given to the CI, who leaves the store and returns to Deputy Archie with eleven rocks of crack cocaine.  *Id*.; DE 8-3 at 189.

An hour later, Deputy Archie executed a search warrant at the Around the Clark store. DE 8-3 at 183, 192.  Petitioner, Northard, and three other people were in the store at the time. *Id*. at 192-93.  Three people, including Petitioner and Northard, were arrested.  *Id*.  Behind the counter and in front of where Petitioner and Northard had been standing, Deputy Archie found a pill bottle containing crack cocaine.  *Id*. at 193-94.  Within the same cabinet, there was a bank money bag containing twenty gram-sized baggies of cocaine powder and a hydrocodone pill. *Id*. at 194-96.  In a separate area, the officers found a coffee cup containing additional crack cocaine and a pill bottle containing several Alprazolam pills.  *Id*. at 196-197, 202-03.  The officers also recovered Super Inositol, which is a dietary supplement used as a cutting agent for drug sales.  *Id*. at 198-201.  Inside the store, the officers located a "cutoff notice from the utilities" that listed Petitioner's name and the address of the store, establishing his ownership. *Id*. at 204.  The officers also found the $75 in investigative funds (or "buy money") originally provided to the CI in Petitioner's pocket.  *Id*. at 191, 206-07.  Following the arrest and search, an officer used a laser to determine that the Around the Clark store was located 544 feet from

---

[5] The video, which is less than five minutes long, has been conventionally filed in the record.  DE 10, Ex. 15.

a church.  *Id*.  A pastor for the church testified at trial that regular services were conducted at the church in July and August 2015.  DE 9-1 at 325.

## **LEGAL STANDARD**

The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction based on a claim that the conviction was obtained in violation of the United States Constitution is strictly circumscribed.  To obtain relief, a prisoner first must have exhausted his state remedies, 28 U.S.C. § 2254(b)(1)(A), meaning he presented the claim to the state courts, and they denied it on the merits.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 844 (1999); 28 U.S.C. § 2254(b).  Both the factual substance of a claim and the federal constitutional issue, itself, must have been expressly presented to the state court to achieve exhaustion for purposes of federal habeas corpus review.  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).  A claim must be presented to the highest state court to satisfy the exhaustion requirement.  *O'Sullivan*, 526 U.S. at 845.  In a Florida non-capital case, this means the applicant must have presented his claims in a district court of appeal.  *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). Exhaustion may be accomplished on direct appeal or, in Florida, it may be accomplished by the pursuit of a Rule 3.850 motion and the appeal of its denial.  *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979).   The exhaustion doctrine ensures that state courts will have a meaningful opportunity to consider allegations of constitutional violations without interference from the federal judiciary.  *Rose v. Lundy*, 455 U.S. 509, 515 (1982).

Once a prisoner establishes that his claim is exhausted, he must show that the state courts' adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a Supreme Court decision yet arrives at a result different from Supreme Court precedent.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A state court decision involves an "unreasonable application" of clearly established federal law when the state court identifies the correct legal rule but unreasonably applies, extends, or declines to extend it to the facts of the case. *See Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  A state court's finding of fact is not unreasonable just because the reviewing federal court would have reached a different finding of fact on its own.  So long as reasonable minds might disagree about the finding of fact, the state court's finding stands.  *See Downs v. Sec'y, Fla. Dep't of Corr.*, 738 F.3d 240, 257 (11th Cir. 2013).  Even if the state post-conviction court made a factual error, its decision still should be affirmed if there is some alternative basis sufficient to support it.  *See Pineda v. Warden*, 802 F.3d 1198 (11th Cir. 2015).  The state court's factual findings are presumed to be correct, and Petitioner bears the burden to rebut that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).  In other words, if some fair-minded jurists could agree with the state court, the state court's decision survives review even if others might disagree.  *See Downs*, 738 F.3d at 257.  If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those

reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).  If the state court's determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Id.*  Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference.  *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019).

## DISCUSSION

Petitioner seeks to vacate his judgment and sentence for the following reasons:

1.   The state courts erred by denying Petitioner's motion to sever the charges against him.

2.   The state courts erred by allowing the lead detective to testify about statements made by the non-testifying CI about material issues in the case, thereby violating Petitioner's federal Confrontation Clause rights.

3.   Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel when his trial counsel (a) misadvised him regarding a plea offer, (b) failed to investigate or present Lawanda Northard as a witness at trial, and (c) failed to investigate or present Ronnie Clark as a witness at trial.

DE 1-1 at 2-14.  This report addresses each of Petitioner's claims.

**I.    Claim One – Denial of Motion to Sever Charges**

In claim one, Petitioner contends that the trial court infringed on his federal constitutional rights by denying his motion to sever.  This claim fails for two reasons.  First, claim one has not been exhausted because it was not fairly presented to the state courts as a federal constitutional issue.  Second, regardless of any failure to exhaust, claim one is without merit.

To properly exhaust state remedies, a petitioner must "fairly present" his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim is "fairly presented" when the petitioner has identified the operative facts and the federal legal theory on which his claim is based so the state courts have a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's federal] constitutional claim." *Kelly v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard v. Connor*, 404 U.S. 270, 277 (1971)). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 354, 365-66 (1995). It is not "sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015). Ultimately, "to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues." *Jiminez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) (per curiam) (quotation omitted).

Here, Petitioner asserted on direct appeal that the trial court erred by denying his motion to sever the counts against him into separate trials, but he did not argue to the appeals court that the trial court's error violated his federal constitutional rights. Petitioner's appellate brief relied solely on state law and a review of those state cases shows that none of them employed federal constitutional analysis.[6] Petitioner's appellate brief made no reference to the United States

---

[6] Petitioner's appellate brief primarily discusses *Dupree v. State*, 705 So.2d 90 (Fla. 4th DCA 1997), *Williams v. State*, 409 So.2d 253 (Fla 4th DCA 1982), *Pittman v. State*, 693 So.2d 1133 (Fla. 1st DCA 1997), and *Johnson v.*

Constitution, a federal statute, or a federal case. As such, I cannot reasonably find that the state court was alerted to a federal claim. Claim one is unexhausted. It is also procedurally defaulted because Petitioner no longer has a state court forum available to him to exhaust claim one. Petitioner makes no showing of the cause and prejudice required to overcome procedural default, nor has he demonstrated that a failure to review the claim will result in a miscarriage of justice. On this basis alone, claim one should be denied. *See, e.g., Coleman v. Thompson*, 501 U.S. at 749-50 (1991) (holding that a state procedural default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice") (citations and internal quotation marks omitted); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").

Additionally, claim one may be denied on the merits.[7] The Supreme Court has observed that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986). Said differently, federal habeas relief is available for improper consolidation of

---

*State*, 796 So.2d 1196 (Fla. 4th DCA 2001) in arguing that the trial court erred under state law in denying the motion to sever. DE 8-2 at 38-50. Petitioner's brief cited no federal cases.

[7] The Fourth DCA affirmed the trial court's denial of the motion to sever without opinion. DE 8-2 at 109, Ex. 5; *Hightower v. State*, 288 So. 3d 654 (Fla. 4th DCA 2019).

counts only if trying the counts together "actually render[s] petitioner's state trial fundamentally unfair and hence, violative of due process." *Tribbitt v. Wainwright*, 540 F.2d 840, 841 (5th Cir. 1976), *cert denied*, 430 U.S. 910 (1977).[8] Petitioner bears the burden to establish unfairness rising to the level of a federal due process violation. *See Hill v. Linahan*, 697 F.2d 1032, 1036 (11th Cir. 1983) (citing *Henson v. Estelle*, 641 F.2d 250, 253 (5th Cir. 1981) ("[t]he burden of proof in a habeas proceeding is always on the petitioner"); *Taylor v. Sec'y, Florida Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014) (quoting *Lisenba v. People of State of California*, 314 U.S. 219, 228 (1941) (to the extent that a state law matter has been exhausted as a federal due process claim, the federal court reviews a state law issue only to determine whether it "so infused the trial with unfairness as to deny due process of law").

Petitioner's trial counsel raised two arguments for severance to the state court. First, counsel argued that it was unfair to try the July 30 counts with the August 5 counts because the transactions were separate and distinct. Trying them together—counsel contended—allowed the July 30 evidence to be admitted as similar fact evidence, also known as *Williams*[9] rule evidence, of whether Plaintiff sold drugs on August 5 because it could be used to prove motive, opportunity, intent, preparation, plan, identity or absence of mistake or knowledge. Second, counsel contended that trying the August 5 cocaine sale with the possession of alprazolam and

---

[8] Fifth Circuit cases decided prior to October 1, 1981 are binding on the Eleventh Circuit under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

[9] *See Williams v. State*, 110 So.2d 654, 662 (Fla.), *cert. denied*, 361 U.S. 847 (1959). *Williams* rule evidence is evidence of other conduct, which, pursuant to Florida Statutes § 90.404(2)(a) is similar to the charged offense and is relevant to prove a material fact in issue, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Similar fact evidence of other crimes, wrongs or acts (*i.e., Williams* rule evidence) is inadmissible when the evidence is relevant solely to prove bad character or a defendant's propensity to commit a crime. Fla. Stat. § 90.404(2)(a).

hydrocodone counts was unfair because those charges involved different drugs, and evidence of one maybe have the effect of bolstering proof of the others.

Petitioner has not proved that the trial court's denial of his motion to sever rendered his state trial so fundamentally unfair that due process was violated.  Prior to deliberations, the state trial court instructed the jury as follows:

> Keep in mind that a separate crime is charged in each count of the Information and although they have been tried together, each crime and the evidence applicable to it must be considered separately and a separate verdict returned as to each.  A finding of guilty or not guilty as to one crime must not affect your verdict as to the other crimes charged.

DE 8-3 at 293.  The jury then deliberated and returned a verdict acquitting Petitioner of all charges except those relating to the sale of cocaine on August 5.  This discerning verdict shows the jury followed the court's instructions to regard each count as separate and distinct. Petitioner cannot show he was prejudiced by the July 30 counts or possession of alprazolam and hydrocodone counts given that he was acquitted of those charges.  *See, e.g., Greene v. Nogan*, 2022 WL 951086, *10 (D.N.J. Mar. 30, 2022) (no prejudice from failing to sever counts where jury acquitted petitioner of counts that were allegedly prejudicial); *Featherstone v. Estelle*, 948 F.2d 1497, 1503-04 (9th Cir. 1991) (joinder of counts did not render trial fundamentally unfair when jury acquitted Petitioner on the counts alleged to be prejudicial). The court's failure to sever the charges in this case did not "result [] in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  *Lane*, 474 U.S. at 446.  Petitioner has identified no Supreme Court case law holding otherwise and cannot show that the Florida courts' rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law.  Claim one should be denied.

## II.      Claim Two – Lead Detective Archie's Testimony

Next, Petitioner contends that the state courts violated his constitutional rights by allowing Deputy Archie to testify about the procedure he employed with the non-testifying CI and statements made by the CI.  Specifically, Deputy Archie testified that he reviewed the July 30, 2015 and August 5, 2015 bodycam videos obtained from the CI directly after each transaction.  DE 9-1 at 253.  When asked why, Deputy Archie responded:

> Uh, one, to validate the information being given to me from the confidential source.  Uh, I personally debrief my confidential informants in the confines of the search of them, the recovery of the items that were sought out to be purchased.  I also ask this confidential source to provide me a detailed synopsis of what they, uh, viewed as happening during that transaction and then I verify that information to be accurate by the use of the video.  That way there's a direct recollection from the source, not something that I'm allowing him to review via – via video.

*Id.* at 253-54.

Petitioner's trial counsel objected to Deputy Archie's testimony as hearsay evidence and a violation of the Confrontation Clause.  *Id.* at 254.  The objection was overruled.  *Id.*  On appeal, the Fourth DCA affirmed the trial court's ruling without opinion.  DE 8-2 at 109, Ex. 5; *Hightower v. State*, 288 So. 3d 654 (Fla. 4th DCA 2019).

The Sixth Amendment Confrontation Clause prohibits the use of testimonial hearsay without giving the defendant an opportunity to cross examine the witness.  This "bedrock procedural guarantee" applies to both state and federal prosecutions.  *Crawford v. Washington*, 541 U.S. 36, 42 (2004).

Petitioner's Confrontation Clause argument is without merit.  As an initial matter, it is not clear that the objected-to testimony from Deputy Archie contained testimonial hearsay evidence from the CI.  Deputy Archie told the jury the procedure he uses in dealing with

confidential sources (explaining that he *asks* the source what happened and then *verifies* their response by comparing it to the video).  He did not convey any statements from the CI in Petitioner's case.  Reasonable jurists could conclude that the deputy's testimony did not contain any out of court statement "offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid.801(c).  When a statement is not hearsay, the Confrontation Clause is not implicated. *U.S. v. McGregor*, 857 F. Supp.2d 1224, 1226 (M.D. Ala. Mar. 8, 2012) (citing *Crawford*, 541 U.S. at 59 n. 9).

Moreover, even if Deputy Archie's testimony were deemed as containing hearsay statements from the CI, Petitioner cannot show the prejudice required to reverse his conviction because violations of the Confrontation Clause are subject to harmless error review.  Such a violation is cause for habeas relief only if it had a substantial and injurious effect or influence in determining the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  To determine whether a Confrontation Clause violation was harmless error, courts evaluate several factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, … and, of course, the overall strength of the prosecution's case."  *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

Here, the evidence against Petitioner was sufficient to convict him without the testimony at issue.  The evidence before the jury included Deputy Archie's personal observations and efforts ensuring the CI had no cocaine on him before meeting with Petitioner, the August 5, 2015 video showing Petitioner counting out ten small objects for the CI in the store, the CI having crack cocaine rocks when he came out of the store, and the matching buy money being subsequently found in Petitioner's pocket.  Considering the overall strength of the prosecution's

case, any out of court statement from the CI is cumulative in nature and only corroborates what the jury saw on the video.  Thus, any Confrontation Clause error was harmless and the verdict against Petitioner should not be disturbed on this basis.  *See, e.g.*, *Mason v. Allen*, 605 F.3d 1114 (11th Cir. 2010) (Confrontation Clause violation found harmless where admitted hearsay statements made to police by CI was cumulative of others corroborating evidence, including petitioner's post-arrest confession to murder and murder weapon found in his car); *United States v. Henry*, 226 Fed. Apx. 963, 965-66 (11th Cir. 2007) (Confrontation Clause violation found harmless where statement recounted to police officer by the CI was cumulative and of little or no importance to the Government's case); *United States v. Barry-Scott*, 251 Fed. Appx. 983, 988-91 (6th Cir. 2007) (Confrontation Clause violation harmless where evidence before the jury included the officer's personal observations, the matching buy money, and testimony of the defendant's daughter); *Figueroa v. U.S.*, 2019 WL 6338420, *5-6 (S.D.N.Y. Nov. 26, 2019) (Confrontation Clause violation harmless where evidence against Defendant included video surveillance and GPS tracking evidence).[10]

Petitioner has identified no Supreme Court case law holding otherwise and cannot show that the Florida courts' rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law.  Claim two is due to be denied.

---

[10] Petitioner cites to *Hutchins v. Wainwright*, 715 F.2d 512 (11th Cir. 1983), in which the Eleventh Circuit affirmed the grant of habeas corpus relief on grounds that admission of hearsay statements of a non-testifying CI violated the Confrontation Clause.  *Id.* at 516-17.  This violation was found *not* harmless because the statements were central to the prosecution's case and there was "a total absence of any corroborative testimony of the identity of Hutchins." *Id.* at 517.  Here, by contrast, there is significant corroborating evidence including video footage of Petitioner selling cocaine to the CI and the deputy's own personal observations of this transaction such that a Confrontation Clause issue, if any here, would readily fall in the camp of harmless error.

### III.    Claim Three – Ineffective Assistance of Trial Counsel

Claim three alleges that Petitioner's trial counsel rendered ineffective assistance by (a) misadvising Petitioner about a plea offer from the State; (b) failing to call Lawanda Northard as a witness; and (c) failing to call Ronnie Clark as witness.

The governing standard for ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  The *Strickland* analysis is two-pronged, and the court may "dispose of the ineffectiveness claim on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992); *see Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffectiveness claim … to address both components of the inquiry if the defendant makes an insufficient showing on one.").

First, Petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  The Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.  "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 18 (2013).  Counsel is not ineffective for failing to raise non-meritorious issues. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).  Counsel is also not required to present every non-frivolous argument. *Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013).  There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel has in making tactical decisions. *Chandler v. United States*, 218 F.3d 1305, 1313, 1317 (11th Cir. 2000) (*en banc*), *cert. denied*, 531 U.S. 1204 (2001).  The test for ineffectiveness is not whether counsel could have done more; perfection is not required.  Nor is the test whether

the best criminal defense attorneys might have done more. *Id.* at 1316. Instead, to overcome the presumption that assistance was adequate, "a petitioner must 'establish that no competent counsel would have taken the action that his counsel did take.'" *Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014) (quoting *Chandler*, 218 F.3d at 1315).

Second, Petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. *Strickland*, 466 U.S. at 694. That is, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Lastly, a federal court reviewing a state post-conviction court's determination does not apply *Strickland de novo*, "but rather, through the additional prism of [Section 2254(d)] deference." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1126 (11th Cir. 2012). "Thus, under this doubly deferential standard, the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. And if, at a minimum, fair-minded jurists could disagree about the correctness of the state court's decision, the state court's application of *Strickland* was not unreasonable and [Section 2254(d)] precludes the grant of habeas relief." *Id.* (internal citation omitted).[11] This "[d]ouble deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Evans v. Sec'y, DOC, FL*, 699 F.3d 1249, 1268 (11th Cir. 2012).

---

[11] *But see Evans v. Sec'y, Dep't of Corrs.*, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (*en banc*) (Jordan, J., concurring) (explaining that double deference to a state court's adjudication of a *Strickland* claim applies only to *Strickland's* performance prong, not to the prejudice inquiry).

### A.      Improper Advice Regarding a Plea Offer

Claim 3.A alleges that trial counsel was ineffective for misadvising Petitioner regarding

a potential plea offer.  In support, Petitioner states:

> Petitioner asked [Mr. Noble] if his prior federal conviction could
> be used to enhance potential state sentences in the event of
> conviction.  Counsel responded that the federal convictions could
> not enhance his sentence.  Further, immediately before trial,
> counsel told Petitioner he would not present Lawanda Northard
> as previously planned and would present no defense.  Petitioner
> alleged counsel's failure to inform him of the decision against
> calling Northard or choosing a "no defense" strategy interfered
> with Petitioner's ability to make a voluntary choice on accepting
> or rejecting the plea.

DE 1-1 at 4-5.

Petitioner raised this issue in his Rule 3.850 motion.  The state court denied this claim

as follows:

> The Defendant alleges that trial counsel was ineffective for failing to advise him
> to take a favorable plea.
>
> The Court agrees with the well-reasoned response put forth by the State. (See
> State Ex. 1).  The record refutes the Defendant's allegation.  The Defendant was
> well aware of the sentence he faced.  (See Nelson hearing transcript attached as
> part of Ex. 1).  Further, the Defendant believed that he had a defense to the
> charges even though trial counsel specifically stated that she knew of no defense
> to the charges based on the video recording that the State would present.  See
> Nelson hearing transcript page 11 attached as part of Ex. 1). The Defendant's
> claim is refuted by the record and without merit.

DE 8-4 at 93-94.  The Fourth DCA affirmed the state habeas court without issuing a written

opinion.  DE 8-4 at 140, Ex. 11.

Petitioner has failed to show that the state courts' adjudication of this claim was contrary

to or unreasonably applied clearly established federal law or based on an unreasonable

determination of fact.  The record shows that on March 16, 2017—when Petitioner was

represented by Ms. Bucchi—the State served Petitioner with a copy of its notice to classify him as a habitual felony offender for sentencing purposes in open court.  DE 8-2 at 2-3, 17-18. Petitioner acknowledged his understanding of the sentencing impact of that notice.  *Id*. at 17-18.  Ms. Bucchi put on the record that Petitioner had rejected an offer of eight years in prison about a year before receiving the State's notice.  *Id.* at 2-3, 17-18.  She further indicated that she told Petitioner he could face life in prison if the state maintained the charge of selling drugs within 1000 feet of a church, and she was aware of no defense that would help him after what she saw on the video which showed him selling crack.  The state court asked the prosecutor if 8 years was still on the table, and the prosecutor responded no.  Instead, the prosecutor offered Petitioner a plea of 10 years in prison.  *Id.* at 210.  At that point, the state court specifically explained to Petitioner that being designated a habitual felony offender would change the maximum penalty he was facing to life imprisonment, but he could avoid that outcome by taking the 10-year deal.  *Id.* at 211-12.  Petitioner told the state court that he understood "very clear[ly]," and he rejected the 10-year deal.  There is no question that Petitioner rejected the State's plea offers well before Mr. Noble entered the case and Petitioner knew as early as March 2017 that he was facing life in prison based on his prior offenses and rejection of a plea deal.

Mr. Noble came onto the case after Petitioner rejected the State's plea offers.  By that point, Petitioner had already been notified of the State's intent to seek an enhanced sentence if he was convicted.  Even if Mr. Noble somehow misadvised him about the impact of his prior federal convictions, the state courts correctly determined that Petitioner suffered no prejudice because there is sufficient evidence on the record showing that he was advised of the penalties he faced by the State, Ms. Bucchi, and the trial court and, understanding those penalties, he nevertheless rejected the State's plea offers.  Claim 3.A. should be denied.

**B.      Decision to Not Call Lawanda Northard as a Witness**

In claim 3.B., Petitioner asserts his counsel was ineffective for failing to call and investigate Lawanda Northard as a witness. As previously mentioned, Northard was Petitioner's employee at Around the Clark store and she was Petitioner's codefendant in the underlying case.  Both she and Petitioner are depicted on the August 5 video.  To support his assertion that calling Northard as a witness would have exonerated him, Petitioner relies on a notarized affidavit Northard sent to Ms. Bucci on August 26, 2016.  DE 8-2 at 173-75.  In the affidavit, Northard claims sole responsibility for the August 5, 2015 drug transaction and claims Petitioner "had no knowledge" of the drug sale or other drugs in the store.  Northard explains that the $75 buy money was ultimately found in Petitioner's pocket because Northard "paid her instore credit bill with the money she received from the drug deal."  Northard attempts to "take full responsibility for" the drug sale as well as the other drugs found behind the counter in the store on August 5, 2015.

When this claim was raised in Petitioner's Rule 3.850 motion, the court denied relief, finding as follows:

> This Court agrees with the well-reasoned response put forth by the State.  As noted by the State, Ms. Northard testified contrary at her sentencing hearing then the testimony that is alleged she would testify to at the Defendant's trial.  (See transcript of Ms. Northard attached as part of Ex. 1).  Further, this alleged testimony would be in opposition to the video that was played for the jury at his trial.  The Defendant's claim is refuted by the record and without merit.

DE 8-4 at 94.  The Fourth DCA affirmed this decision on appeal.  DE 8-4 at 140, Ex. 11.

Petitioner has failed to show the state courts' adjudication of this claim was contrary to or unreasonably applied clearly established federal law or based on an unreasonable

determination of fact.  Northard's sentencing hearing was held on June 1 and June 3, 2016.  She

faced a minimum of 71.6 months' imprisonment and a maximum of 105 years' imprisonment

for the August 5, 2015 drug transaction.  DE 8-4 at 9.  Her counsel argued that Northard should

be sentenced below the minimum sentence based on substantial assistance and the limited role

she played in the underlying offense conduct.  The sentencing court heard testimony from

Detective Evans, for whom Northard worked as a confidential source after her arrest on August

5, 2015.  *Id.* at 12-28.  Detective Evans testified that Northard purchased drugs for him from at

least two other drug dealers and Petitioner was the leader of the drug trafficking organization

in which Northard was involved.  *Id.*  Based on that testimony, Northard's counsel vigorously

argued to the sentencing court that Northard would not have been involved in the August 5,

2015 drug transaction without Petitioner, who directed Northard's actions.  DE 8-4 at 21, 28,

44.  The sentencing judge accepted the parties' representation that Petitioner was "the kingpin"

in the situation.  *Id.* at 43.  Ultimately, Northard was sentenced to 36 months in prison, which

is half the minimum sentence she faced.  Three months after portraying herself as having a

limited role, Northard sent Petitioner's counsel the affidavit purporting to take the blame and

attempting to exonerate Petitioner entirely.  DE 8-2 at 172-75.

Prior to trial, Mr. Noble explained on the record why he refused to call Northard as a

witness, telling the trial judge, "[I]t is my professional judgment that that witness would come

and commit perjury.  With that said, I'm not going to suborn perjury and I base that professional

judgment on the video."  DE 8-2 at 228.  Mr. Noble further explained:

> In the August 5th transaction or allegation, there is a video … of
> Mr. Hightower and Miss Northard.  And the video depicts Mr.
> Hightower handing … Miss Northard something.  That's
> undisputed.  Now what it was, you can't see in the video, but
> anyway at the end of the day he wanted me to call Miss Northard

to testify that the, uh, that the – that whatever he gave her was in fact aspirin.  There are two problems with this …with this aspirin defense.  Number one, Miss Northard said it wasn't aspirin, she didn't know what it was.  She—her basic testimony would be that he didn't sell drugs.   The other problem is that the State conducted an analysis of the substance and the substance returned back with crack cocaine or tested positive for crack.  So those are the two problems and that's why I am not calling Lawanda Northard to the stand.

…

[A]s this Court knows, one of the things that I did in this case was I did file a Motion to Sever, uh, the other – which goes to another reason why I didn't call Miss Northard is, uh, the July 30th offense, Miss Northard is nowhere in the video.  So really what we are talking about are two separate scenarios where Miss Northard is only a witness for one and what she would testify to is either inconsistent or just flat out untrue about what was depicted in the video.  Now we – we would in effect be telling the jury to accept something that has already been proven false.

DE 8-2 at 242-44; *see also id.* at 225-26.

Decisions whether to call a particular witness are generally questions of trial strategy. *See Dorsey v. Chapman*, 262 F.3d 1181, 1185-186 (11th Cir. 2001); *U.S. v. Costa*, 691 F.2d 1358 (11th Cir. 1982).  Federal case law is clear that strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Strickland*, 466 U.S. at 690-91.  Where a decision not to call a witness constitutes reasoned trial strategy, failure to do so is not ineffective assistance of counsel.

Here, it is apparent that Mr. Noble's decision not to call Northard as a witness was a reasonable tactical decision made as part of trial strategy.  Northard's affidavit is directly contradicted by the trial evidence which includes a recorded video clearly showing Petitioner counting out ten small pieces of what turned out to be crack cocaine.  It is also contradicted by the representations Northard and her lawyer made to the sentencing judge for her to obtain a

significantly lower sentence. In Mr. Noble's view, calling Northard to testify regarding Petitioner's lack of involvement or knowledge would have been tantamount to suborning perjury. As established by precedent in the Supreme Court and the Eleventh Circuit, counsel is not constitutionally ineffective for refusing to suborn perjury. *See Nix v. Whiteside*, 475 U.S. 157, 171 (1986) (holding, under the *Strickland* standard, that counsel performs reasonably in discouraging perjured testimony); *Card v. Dugger*, 911 F.2d 1494, 1503 (11th Cir. 1990) ("If counsel's failure to present testimony was motivated by a belief that an ethical obligation precluded him from doing so and that belief was reasonable, then such conduct may not be considered deficient performance under *Strickland*").

Moreover, if called to testify, Northard would have been subject to rigorous cross examination likely destroying her credibility in the eyes of the jury. In addition, the timing of her affidavit, which was not provided until after her sentencing when, conveniently she had nothing to lose, is highly suspect. Courts have held that affidavits of this nature are to be viewed with extreme suspicion. *See Drew v. Scott,* 28 F.3d 460, 462-63 (5th Cir.), *cert. denied*, 512 U.S. 1266 (1994) ("we still have little confidence in the [codefendants'] post sentencing truth experience because he had nothing whatsoever to lose by incriminating himself after receiving a 60 year sentence"); *United States v. Vergara*, 714 F.2d 21, 23 (5th Cir. 1983) (holding that the district court may deny defendant a new trial, without an evidentiary hearing, if it determines that a previously silent accomplice's postconviction willingness to exculpate his codefendant is not credible). Petitioner has not shown error or prejudice in the failure to call Northard as a witness. This claim is due to be denied.

**C.      Decision to Not Call Ronnie Clark as a Witness**

In claim 3.C., Petitioner asserts that trial counsel was ineffective for failing to investigate or present Ronnie Clark as a witness for trial.  Petitioner claims Clark would have testified that Petitioner was not involved in illegal drug transactions and only sold over the counter medicines at Around the Clark store.  DE 1 at 21.

When this claim was raised in Petitioner's Rule 3.850 motion, the court denied relief, finding as follows:

> The Defendant claims that trial counsel was ineffective for failing to investigate and call witness Ronnie Clark to testify.
>
> Similar to ground two, Mr. Clark's testimony would be completely contradictory to the video recording that was played for the jury at his trial showing the Defendant conduct the drug deal to a confidential informant.  The Defendant's claim is refuted by the record and without merit.

DE 8-4 at 94.  The Fourth DCA affirmed this decision without opinion.  DE 8-4 at 140, Ex. 11.

Petitioner cannot demonstrate that the state habeas court's conclusion was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts.  Even if counsel erred by failing to investigate or call Ronnie Clark, Petitioner has proffered nothing Clark would testify to that rebuts the video recording showing Petitioner conducting the transaction or the fact that the $75 buy money was found in Petitioner's pocket on arrest.   Accordingly, Petitioner is not entitled to federal habeas corpus relief in connection with this claim.

## AN EVIDENTIARY HEARING IS NOT WARRANTED

Petitioner's request for an evidentiary hearing on his ineffective assistance of counsel claims should be denied.  If a habeas corpus petitioner "alleges facts that, if true, would entitle

him to relief, then the district court should order an evidentiary hearing and rule on the merits of the claim." *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989), *quoting Slicker v. Wainwright*, 809 F.2d 768, 770 (11th Cir. 1987).   No hearing is required, however, where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. *Holmes,* 876 F.2d at 1553. Here, for the reasons discussed above, Petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

## A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate of appealability ("COA") is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a COA. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting *Miller-El*, 537 U.S. at 327).  Here, Petitioner has not made the requisite showing.  Accordingly, I recommend that the District Court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a).  If there is an objection to this recommendation, the relevant party shall file such an objection with the District Court.

## CONCLUSION

Based on the foregoing, I respectfully recommend to the District Court that the Petition for Writ of Habeas Corpus, DE 1, be **DENIED** in its entirety and that the District Court **DENY** a certificate of appealability.

## NOTICE OF RIGHT TO OBJECT

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Donald M. Middlebrooks.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).  **Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 9th day of September, 2025.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE